

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## MCALLEN DIVISION

ENTERED
05/22/2013

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 08-70260** |
| **MARCO A. CANTU, ROXANNE CANTU** | § | **CHAPTER 7** |
| | § | |
| Debtor(s). | § | **JUDGE ISGUR** |
| | § | |
| | § | |
| **MARCO A CANTU,** *et al* | § | |
| | § | |
| Plaintiff(s), | § | |
| | § | |
| vs. | § | **ADVERSARY NO. 13-07001** |
| | § | |
| **ELLEN STONE,** *et al* | § | |
| | § | |
| Defendant(s). | § | |

## MEMORANDUM OPINION

The Trustee's Motion for Summary Judgment, (ECF No. 45), is granted in part. The proceeds of the settlement with Stone are property of the estate. Distribution must await resolution of International Bank of Commerce's motion to intervene and notice of lien.

The Cantus' Motion for Summary Judgment, (ECF No. 49), is denied.

## Facts

There are no relevant, disputed facts.

On May 6, 2008, the Cantus filed a petition for relief under Chapter 11 of the Bankruptcy Code. On the same day, Mar-Rox, Inc. (the Cantus' wholly owned corporation), also filed a petition for relief under Chapter 11 of the Bankruptcy Code. The Cantus' and Mar-Rox's bankruptcy cases were treated as jointly administered as of November 5, 2008.

On June 2, 2008, subsequent to the initial chapter 11 bankruptcy filings, Ellen Stone and the Stone Law Firm PC (hereinafter, "Stone") were retained to represent the Cantus and Mar-Rox in their (then-separate) Chapter 11 bankruptcy cases.  On June 10, 2008, the Bankruptcy Court entered an order authorizing Stone's employment.

On June 24, 2009, about one year after Stone began representing the Cantus, the case was converted to a Chapter 7.  Contemporaneously, Michael B. Schmidt was appointed Chapter 7 Trustee over the bankruptcy estate.

On February 17, 2011, this Court issued *In re Cantu*, 2011 WL 672336 (Bankr. S.D. Tex. 2011), and denied the Cantus' discharge.  The opinion was based, in part, on the Cantus' fraudulent omissions, improper transfers of estate assets, false oaths, refusal to comply with lawful court orders, failure to keep adequate records, and the fraudulent withholding of information from the Trustee.

On November 17, 2011, Katherine Driscoll Julia, the Cantus' litigation counsel, advised Stone that she intended to pursue causes of action relating to Stone's legal representation of the Cantus during the Chapter 11 case.  All of the allegations against Stone related to events that occurred prior to conversion of the case to chapter 7.[1]

On January 4, 2012, the Trustee advised Julia that he considered these potential causes of action to be property of the bankruptcy estate.  (ECF No. 45 at 4; ECF No. 47 at 2).  The Cantus argue that the causes of action are their individual property.

---

[1] The preceding paragraphs are taken from the Trustee's fact section in its Motion for Summary Judgment.  (ECF No. 45 at 2-4).  The Cantus agree that these facts are accurate.  (ECF No. 47 at 2) ("Trustee's motion correctly sets out the particulars regarding the history of the bankruptcy . . . .").

On January 17, 2012, this Court entered an order authorizing the Trustee to employ special counsel to investigate and pursue claims against and related to Stone.  (Case No. 13-7001, ECF No. 2080).  The Court did not rule on the question of ownership.

On February 13, 2012, the Cantus, through their counsel Julia, filed a petition in the 275th Judicial District Court of Hidalgo County, Texas, alleging causes of action against Stone arising from alleged misconduct that occurred prior to the conversion from Chapter 11 to Chapter 7.

On March 23, 2012, Stone removed the State Court Lawsuit to the United States District Court for the Southern District of Texas, McAllen Division.

On April 20, 2012, the Cantus moved to remand.

On April 23, 2012, the Trustee filed an omnibus motion in the removed state court lawsuit, seeking substitution of the parties, intervention, and referral to the Bankruptcy Court.[2]

On August 7, 2012, the District Court entered its Order Denying Motion to Remand.  The Order included the following ruling:  "The Court concludes that [the Cantus'] legal malpractice claims arose prior to conversion and are owned by the bankruptcy estate."  (ECF No. 21).

On August 16, 2012, the Cantus filed a Motion to Reconsider the Order Denying Motion to Remand.  (ECF No. 23).  The District Court struck this motion on October 24, 2012.  (ECF No. 33).

A settlement with Stone was ultimately reached.  The Cantus and the Trustee submitted an Unopposed Agreed Motion Seeking Approval of Compromise on December 21, 2012.  (ECF No. 36).  The District Court approved the settlement agreement on January 28, 2013.  (ECF No.

---

[2] The preceding four paragraphs also come from the Trustee's Motion for Summary Judgment.  (ECF No. 45 at 4-5). Again, the Cantus explicitly state that the Trustee's description is correct as to these facts.  (ECF No. 47 at 4) ("Trustee correctly sets out the timeline for the commencement of the case, its removal, and his appearance.").

39).  The proceeds were deposited in the Court registry, where they await distribution.  (ECF No. 39 at 2).

After approving the settlement agreement, the District Court referred the case to the Bankruptcy Court.  (ECF No. 40).

The Trustee moved for summary judgment on March 1, 2013.  (ECF No. 45).  The Trustee requests: (i) the Court find that the settlement proceeds are property of the estate (and thus owned exclusively by the Trustee); and, (ii) disbursement of the proceeds from the Court registry.  (ECF No. 45 at 9).  The Cantus filed a response in opposition and a cross-motion for summary judgment on March 20, 2013.  (ECF No. 47).

In the interim, International Bank of Commerce ("IBC) filed a Motion for Leave to File Complaint in Intervention and Notice of Lien Claim.  (ECF No. 46).  IBC alleges a valid lien and security interest in the proceeds of the settlement agreement.  (ECF No. 46 at 4).  IBC's motion must be addressed prior to any distribution.

### Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Fed. R. Bankr. P. 7056 incorporates Rule 56 in adversary proceedings.

A party seeking summary judgment must demonstrate:  (i) an absence of evidence to support the non-moving party's claims or (ii) an absence of a genuine dispute of material fact. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006).  A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

4 / 14

A court views the facts and evidence in the light most favorable to the non-moving party at all times. *Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009). Nevertheless, the Court is not obligated to search the record for the non-moving party's evidence. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact.[3] Fed. R. Civ. P. 56(c)(1). The Court need consider only the cited materials, but it may consider other materials in the record. Fed. R. Civ. P. 56(c)(3). The Court should not weigh the evidence. A credibility determination may not be part of the summary judgment analysis. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). However, a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. Fed. R. Civ. P. 56(c)(2).

"The moving party bears the burden of establishing that there are no genuine issues of material fact." *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 412 (5th Cir. 2008). The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence that would entitle the movant to judgment at trial. *Malacara*, 353 F.3d at 403. Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact. *Sossamon*, 560 F.3d at 326. The non-moving party must cite to specific evidence

---

[3] If a party fails to support an assertion or to address another party's assertion as required by Rule 56(c), the Court may (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if, taking the undisputed facts into account, the movant is entitled to it; or (4) issue any other appropriate order. Fed. R. Civ. P. 56(e).

demonstrating a genuine dispute.  Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986).  The non-moving party must also "articulate the manner in which that evidence supports that party's claim."  *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004).  Even if the movant meets the initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact.

If the non-movant bears the burden of proof of an issue, the movant must show the absence of sufficient evidence to support an essential element of the non-movant's claim. *Norwegian Bulk Transp. A/S*, 520 F.3d at 412.  Upon an adequate showing of insufficient evidence, the non-movant must respond with sufficient evidence to support the challenged element of its case.  *Celotex*, 477 U.S. at 324.  The motion should be granted only if the non-movant cannot produce evidence to support an essential element of its claim.  *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

<u>Analysis</u>

**I.    Law of the Case Doctrine/Mandate Rule**

**a.  The Rule**

"The law of the case doctrine provides that 'an issue of law or fact decided on appeal may not be reexamined either by the district court on remand or by the appellate court on a subsequent appeal.'"  *Furhman v. Dretke*, 442 F.3d 893, 896 (5th Cir. 2006) (quoting *United States v. Becerra*, 155 F.3d 740, 752 (5th Cir. 1998) (internal quotations omitted)).

"The principles surrounding the law of the case doctrine apply equally to the mandate rule, 'which is but a specification application of the general doctrine of law of the case.'"  *Id.* at 897 (quoting *United States v. Lee*, 358 F.3d, 315, 321 (5th Cir. 2004)).  The mandate rule "provides that a lower court on remand must 'implement both the letter and the spirit of the

[appellate court's] mandate,' and may not disregard the 'explicit directives' of that court."
*Becerra*, 155 F.3d at 753 (quoting *Johnson v. Uncle Ben's, Inc.*, 965 F.2d 1363, 1370 (5th Cir.
1992)).

**b. Application**

The District Court's Order Denying [the Cantus'] Order to Remand contained extensive
analysis as to ownership of the claims.  (ECF No. 21 at 3-5).  The District Court concluded that
these claims were in fact property of the estate.  (ECF No. 21 at 6) ("Accordingly, the Court
concludes that Plaintiffs' legal malpractice claims arose prior to conversion and are owned by the
bankruptcy estate.").

Absent other circumstances, this case would be a straightforward application of the
Mandate Rule.  If the Mandate Rule applies, the Trustee's Motion for Summary Judgment must
be granted on the issue of ownership (as the District Court already ruled that the cause of action
was property of the estate).

In its Order Referring Case to Bankruptcy Court, however, the District Court also stated
the following:

> "[The Cantus] have settled their claims against their former attorneys and
> the proceeds have been deposited into the Court's registry.  The
> Bankruptcy Court is in a better position to determine in the first instance
> whether these proceeds are property of the Estate and their appropriate
> distribution."

(ECF No. 40 at 2).  This statement appears ask this Court to determine the distribution of the
funds, notwithstanding the District Court's Order Denying Motion to Remand.

For the purposes of completeness, and to avoid any ambiguity, the Court will further explain the correctness of the District Court's determination that proceeds of the cause of action are Estate property.

## II.   Property of the Estate

### a.   11 U.S.C. § 1115

Section 1115 of the Bankruptcy Code states that, in an individual chapter 11 case, all property (of the kind specified in § 541) acquired postpetition but prior to the closing, dismissal, or conversion of the case constitutes property of the estate.   11 U.S.C. § 1115.   The Cantus concede that, under the "accrual" theory discussed below, if the causes of action accrued preconversion they are owned by the estate.

### b.   The District Court's Analysis

The District Court's analysis was based on the Fifth Circuit case of *In re Wheeler*, 137 F.3d 299 (5th Cir. 1998). (ECF No. 21 at 3-5).   In *Wheeler*, a bankruptcy debtor sued his attorney for malpractice after the debtor was convicted of bankruptcy fraud many years after the case. 137 F.3d at 300.   The question in *Wheeler* was whether the cause of action was § 541(a) property (i.e., property of the estate) or whether it was owned by the debtor.

In *Wheeler*, the Fifth Circuit first discussed the varying approaches to determining ownership of property for § 541(a) purposes as it relates to the accrual of a tortclaim.   (*Id.*).   The first is the "accrual" approach, which requires that the cause of action have accrued under nonbankruptcy law for it to be § 541(a) property of the estate.   (*Id.*).   The second is the "conduct" approach, which holds that a claim arises at the moment the conduct giving rise to the alleged liability occurs.   (*Id.*).   Finally, the Fifth Circuit noted a middle ground, in which "courts have determined that a claim arises at the time of the negligent conduct forming the basis for liability

only if the negligent actor had some type of specific relationship with the debtor at that time." *Id.* at 300-301 (citing *In re Piper Aircraft Corp.*, 162 B.R. 619 (Bankr. S.D. Fla. 1994)).

The Fifth Circuit noted that its prior decision of *Lemelle v. Universal Mfg. Corp.* accepted the *Piper*-style "middle-ground" approach where there is evidence of a prepetition contact, privity or other relationship between the tortfeasor and the injured claimant. *Id.* at 301 (citing *Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268 (5th Cir. 1994)). The Fifth Circuit held that Wheeler and his attorney had such a relationship. (*Id.*).

The Fifth Circuit then further held that, even if the "accrual" approach were used instead of the "middle-ground" approach, Wheeler's causes of action were § 541(a) property of the estate because, under applicable Mississippi law, they had accrued prepetition. (*Id.*).

The District Court in this case found that, like Wheeler and his attorney, the Cantus and Stone had a relationship meeting the requirements of the *Piper/Lemelle* "middle-ground" approach. The District Court did not use the "accrual" approach. Under the *Piper/Lemelle* "middle-ground" approach, assuming the requisite relationship between the parties, ownership for § 541(a) purposes turns on when the conduct occurred. All parties here agree that the conduct occurred preconversion. As a result, the District Court ruled that the causes of action constituted property of the estate.

The Court is both bound by and fully adopts the District Court's holding and its reasoning. The Court will nevertheless address the Cantus' contentions.

### c.  *In re Swift*

The Cantus argue that the Fifth Circuit case of *In re Swift* controls. (ECF No. 47 at 5). *Swift* is a case using the "accrual" approach, as opposed to the *Piper/Lemelle* "middle-ground" approach. The Cantus, in their argument as to why the District Court's and the Trustee's

analysis is incorrect, fail to recognize that *Wheeler* and *Swift* use two different approaches (both of which are valid in the Fifth Circuit depending on the circumstances).[4]

Even if the "accrual" approach is used, this Court would hold that the causes of action accrued preconversion.

Swift was a State Farm employee who participated in a "Keogh" retirement plan (administered by State Farm). *State Farm Life Ins. Co. v. Swift (In re Swift)*, 129 F.3d 792, 794 (5th Cir. 1997). As of February 1990, when Swift began contemplating filing for bankruptcy, State Farm had still not amended its "Keogh" retirement plan structure to comply with the 1986 amendments to the federal tax code. (*Id.*). Swift, fearing State Farm's mistake might result in the property not being exempt, converted the "Keogh" retirement plan into a self-directed Individual Retirement Account (IRA). (*Id.*). Thereafter, Swift filed for bankruptcy. (*Id.*). Swift's IRA was eventually declared nonexempt property after a creditor objected to his claimed exemptions. (*Id.*).

Swift sued State Farm in state court, alleging negligence and breach of fiduciary duty. (*Id.* at 794-95). State Farm removed the case to the bankruptcy court. State Farm filed for summary judgment, arguing that the causes of action were property of the bankruptcy estate and not of Swift as an individual. (*Id.* at 795). The district court affirmed the bankruptcy court's order denying State Farm's motion for summary judgment, which State Farm appealed to the Fifth Circuit. (*Id.*).

---

[4] The Cantus argue repeatedly that *Wheeler* should not be applied as it "is a Mississippi" case. The Cantus are correct that using the test for accrual under Mississippi law (discussed in connection with *Wheeler*'s alternate holding under the "accrual" theory) would be incorrect in a case governed by Texas law (assuming there is a difference between Texas and Mississippi law as to accrual). This is not how the District Court used the *Wheeler* case, however. The District Court used the *Wheeler* case for its holding that the *Piper/Lemelle* "middle-ground" approach is an appropriate alternative to the "accrual" approach where the requisite relationship is present between the parties.

The *Swift* court determined that, if the cause of action accrued prepetition, it was property

of the Estate under § 541(a), and if it accrued postpetition then it was Swift's property as an

individual.  (*Id.*).  The First Circuit held that state law (there, as here, Texas law) determines

when a cause of action accrues.  (*Id.*).  The Firth Circuit interpreted the question of accrual under

Texas law as follows: "The accrual of a cause of action means the right to institute and maintain

a suit, and whenever one person may sue another a cause of action has accrued."  *Id.* at 795

(citing *Luling Oil & Gas Co. v. Humble Oil & Refining Co.*, 191 S.W.2d 716, 721 (1946)).

All of the causes of action brought by the plaintiff in Swift required a showing of

damages:

> Damages are an essential element of each of [Swift's] theories.  Therefore,
> some form of legal injury must occur before these causes of action accrue.
> **But, it is not necessary to know immediately the type and extent of**
> **that injury. All that is needed is a specific and concrete risk of harm**
> **to the party's interest.**

(*Id.* at 795-96) (emphasis added).  Under Texas law, the question of when a plaintiff has suffered

a legally-cognizable injury depends on the acts complained of:

> If the act is of itself not unlawful in th[e sense of constituting legally
> cognizable injury in and of itself], and plaintiff sues to recover damages
> subsequently accruing from, and consequent on, the act, the cause of
> action accrues, and the statute begins to run, when, and only when, the
> damages are sustained;  and this is true although at the time the act is done
> it is apparent that injury will inevitably result.
>
> If, however, the act of which the injury is the natural sequence is of
> itself a legal injury to plaintiff, a completed wrong, the cause of action
> accrues and the statute begins to run from the time the act is committed,
> even where little, if any, actual damage occurs immediately on
> commission of the tort.

*Swift*, 129 F.3d at 797 (citing *Atkins v. Crosland*, 417 S.W.2d 150 (Tex. 1967)).  In the Texas

case excerpted in *Swift*, the plaintiff sued his accountant for malpractice as a result of the

accountant's decision to use cash accounting instead of accrual accounting.  *Swift*, 129 F.3d at

797.   The decision to use cash accounting instead of accrual accounting is not one that will necessarily result in injury (absent other events). (*Id.*).  As a result, the cause of action did not accrue until after a tax deficiency resulted (thereby causing injury to the plaintiff).  (*Id.*).

The Fifth Circuit contrasted that scenario with the following:

> Consider a case of medical malpractice in which the treating physician has left a dangerous metal instrument inside the body of his patient.  At the time the doctor finishes the surgery, the doctor has completed a tort.  He has violated a legal duty owed to the patient, and the patient was injured by that violation.  If the patient instituted suit at this moment, his suit would be viable.  The statute of limitations has not begun to run, however.  Under the discovery rule, the statute of limitations is tolled until the patient either discovers or should have discovered that an injury has occurred.  This example shows that the dates of accrual and the start of the running of the statute of limitations may vary greatly.  Unfortunately, many cases applying the principles of the discovery rule are written in terms of accrual.

(*Id.* at 796).   Under such a scenario, the damages occurred (and therefore the plaintiff suffered injury and a cause of action accrued) upon completion of the act itself.  In the actual case at issue in *Swift*, the Fifth Circuit held that the plaintiffs' causes of action accrued at least by the time the retirement account was converted.  (*Id.* at 798 n.35)  The plaintiff suffered at least one set of damages (of a loss of tax advantages) at the moment he converted his "Keogh" retirement plan to an IRA, which occurred prepetition.  (*Id.* at 799).  The cause of action was therefore held to be § 541(a) property of the estate.

The Cantus argue in their cross-motion for summary judgment that no legally-cognizable injury was suffered prior to the conversion of the case from a Chapter 11 to a Chapter 7.  (ECF No. 47 at 9).  The Court disagrees.

The Cantus' complaint brings causes of action for: (i) legal malpractice, (ii) vicarious liability; (iii) gross negligence; (iv) Texas DTPA violations; (v) violations of the Texas Rules of Disciplinary Procedure; (vi) fraudulent misrepresentation; and, (vii) fraudulent inducement.

(ECF No. 1).  The overarching theme of the complaint is that Stone's malpractice and negligence sabotaged the Cantus' bankruptcy case.

Unlike the Texas accountant malpractice action discussed in *Swift*, the acts complained of are not simply erroneous tactical decisions (e.g., choosing cash accounting versus accrual accounting).  The Cantus' complaint lists the following alleged failures by defendants: (i) not advising the Cantus to withdraw their ill-advised bankruptcy filing; (ii) taking on the Cantus' complex bankruptcy case while lacking the requisite experience; (iii) placing an inexperienced associate in charge of the case; (iv) failing to make sure that the associate came to the hearings on time and prepared; (v) failing to file a motion for use of cash collateral until 33 (in the Cantus' personal bankruptcy) and 75 days (in the Mar-Rox case) after the petition; (vi) failing to advise the Cantus about actions (such as giving gifts to relatives) prohibited by the Bankruptcy Code; (vii) filing an unconfirmable plan that included obvious and avoidable errors; and, (viii) failing to properly prepare the expert witness for the important confirmation hearing.  (ECF No. 1 at 7-9).  In addition, the Cantus argued that Stone fraudulently misrepresented their bankruptcy expertise for the purpose of obtaining over $300,000.00 in fees from the Cantus.  (ECF No. 1 at 7).

The complaint describes a situation analogous to the hypothetical in *Swift* about a surgeon who leaves a medical instrument in a patient after surgery.  As with the performance of this hypothetical doctor, the acts complained of are so egregious and so outside the bounds of acceptable, professional conduct of a fiduciary that (at some point well before the conversion) the acts created "a specific and concrete risk of harm" to the Cantus' interests sufficient to constitute legally cognizable injury.

13 / 14

As a result, even under the "accrual" theory argued by the Cantus', these are preconversion causes of action.  As a result, the causes of action (and their settlement proceeds) are property of the estate.

## Conclusion

The Court will enter an order in accordance with this Memorandum Opinion.

SIGNED **May 22, 2013.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE